Mr. Plank. I'll use my own watch as well, Your Honor. Okay. Thank you. With respect to the plea agreement issue that I have raised, I am not familiar with what other districts do, other United States attorneys' offices do. But it is a common practice when entering into cooperation agreements that the language that I have cited as objectionable is placed into all of the 5K1 agreements of which I am aware. And it is this policy that I submit to you is coercive, objectionable, and interferes with the accused's right to freely investigate without the interference of the United States attorney. I can think of nothing more coercive, more objectionable, or having to do with having to interfere more with the right of a defendant and his counsel to inquire into and investigate the facts of the case than to have the kind of coercive language of alleged co-conspirators and co-defendants who have made agreements with the government which restricts the ability of those alleged co-defendants and witnesses against the accused who chooses to go to trial. Let's assume for the purpose of this argument that you're right on the merits of that issue. What's the prejudice on this record? Well, it's a due process violation, and the reason I'm saying it's a due process violation is that it's, for the purpose of the question I'm asking, that it was a constitutional violation for the government to put this in the cooperating witnesses plea agreement. My question is, assuming that that's a constitutional violation, what's the prejudice? Oh, I think prejudice is presumed from the interference that the government engages in. Do you have any authority to support that proposition? Well, Your Honor, it seems to me that if I am not able to interview witnesses and engage in those interviews the question, Mr. Klink, was, is there authority to support the proposition you just put forward, which is that we should presume prejudice? I have cited all the authority in the briefs that I have. Let's assume for the purpose of my next question that prejudice is required. What is the prejudice on this record? The prejudice on this record is that I was not given the opportunity to interview those witnesses and to find out precisely what the agreement with the government was. Well, my understanding is what, there were four witnesses? There were. And that three of them you simply couldn't contact? Correct. You were unable to connect with them, so you don't know if they would have invoked that clause or not invoked it. You simply weren't able to communicate with them. But it seems to me they were bound by the clause. But, well, the other thing is that as I understand it, you asked for dismissal. And it seems to me that you could have asked for a continuance to try to see if you could interview and contact the witnesses. You could have asked the court for relief of that provision for purposes of interviewing the witnesses. Could have gone forward. You'd have cross-examination of the witnesses if they came to stand, and then we'd be able to see if there was prejudice. So it seems to me, and I'd appreciate your comment, that there are a number of smaller steps you could have taken or the court could have taken short of dismissal. Well, Your Honor, invariably we run into this problem. I've never raised this issue in an appellate brief before. But it seems to me to be an unsavory practice. I can't tell you what I would have discovered with the interviews and so forth. And it is true that I could – I presume that I could have asked for a continuance, but the case had been pending for a number of months. I was the second lawyer on the case, and the defendant wanted to go to trial. Let me ask you, I'd like to move off of that. I mean, obviously it's an interesting issue, and as you appropriately pointed out, it's not one that we've seen directly before. But the issue that troubles me in this case is the fingerprint identification. And it troubles me in two ways. One, it seems to me that it's troublesome that the identification was made without any foundation. That's point one. But on the opposite side, it also troubles me that a holding to that effect would almost undo what is one of the major law enforcement techniques we have in the United States, which is the NCIC database. What's your position on this, both as a legal matter and as a practical matter? Well, it seems to me that a standard of – if you're going to elevate a sentence for an accused to the extraordinary levels that were mandated by the guidelines at the time that this sentence was imposed, that fundamental fairness requires a more stringent evidentiary base with respect to these matters. I'm not sure what you mean by how that impacts on the NCIC database. Well, really I think because most people have assumed if you have a match, you have a foundation for the conviction, and convictions have typically been used as bases for enhancement. Does this mean that they're going to have to, in every case where you have a conviction, every defendant's going to say, that wasn't me. It might even be my very own name, but that wasn't me. So the government's going to have to haul in foundational evidence on reliability of the database. I – no. I think what the government is going to have to haul in is a fingerprint examiner who can testify and identify and indicate that the fingerprints that were obtained in this conviction in Michigan, in this case, are, in fact, the fingerprints of this defendant. That's not a difficult task to undertake. We do it in allegations of prior convictions in the state courts here in Arizona all the time. And it's simply a matter of bringing a fingerprint technician in the state's situation from the Maricopa County Sheriff's Office. Government can do that, too. They have access to that. And all they have here, as I understand it, really is the computer or the printout evidence. They don't have any direct linkage. Is that correct? That's the way it appears to me. And then there are a couple of faxes from – apparently from Washington that I submitted in a supplemental excerpt. But that was extraordinarily troubling to me that the district court judge essentially took judicial notice of the reliability of the expertise of the unknown fingerprint examiners who said, this is a match. What – this case, like many of the others that are pending, falls in that netherworld of Ameline, Booker, Fanfan, et cetera. Just hypothetically, if we were to remand it simply because the guidelines are now advisory instead of mandatory, would we need to address this conviction issue on appeal, the fingerprint conviction issue? Oh, I think so. Because the defendant is still contesting the validity of the fingerprint issue. And I think that, you know, while hearsay is acceptable, we do have – we do have to have some indicia of reliability. And I would submit under these circumstances, if the defendant has taken the position that this is not him, then there certainly has to be some reliable evidence and a fax from Washington I don't think should be considered reliable, and I don't think the Court ought to be allowed to take judicial notice of that matter. Mr. Klink, you're down to under a minute. Did you want to save any time for rebuttal? I do not. But I do want to address some comments that the Court made at sentencing, just to give you the context of what we're talking about. And I am referring to the sentencing that took place on March the 22nd of 2004. The judge indicated with respect to addressing these prior conviction issues, she had already determined that there were prior convictions. It looks like I'm running out of time. But in any event, I would address you to page 13 and 14 of the sentencing transcript with respect to the judge's comments, because I think they're enlightening in terms of the context in which we're dealing. Thank you, Your Honor. Thank you, counsel. Thank you for your argument. Ms. Boone. Good morning, Your Honor. As the mayor of the police court, Linda Boone, on behalf of the United States, there is no evidence that the defendant was prejudiced by the language of the plea agreements of the cooperating co-defendants in this case. The defense did not even file the motion until the day of trial, did not even request a hearing or a ruling on the motion until the government had closed its case, which was essentially the end of the trial, because the defense did not present any evidence. And the district court found, based on defense counsel's own representations, that the defense had not attempted to contact these witnesses until the Friday before trial, which was four days before trial, that two of the witnesses had declined to be interviewed, and that one had not responded to the request. There was no clear error in these findings. And based on those findings, the district court denied the motions. It is clear from the transcript of the cross-examination in this trial that defense counsel thoroughly cross-examined the witnesses, went into explicit details regarding the terms of the plea agreements, and essentially made it clear to the court, to the jury, just exactly what the effect of the plea agreements and the language could be on the testimony of those witnesses. Therefore, there's been absolutely no establishment of prejudice to the defendant. These witnesses were known to the defendant. There was no surprise witnesses. There was no attempt by the government to hide the witnesses or, you know, keep the defense from interviewing them. And while the defense has relied on the Sixth Circuit case of Gregory in its brief, this Court, while condemning some of the language in the plea agreement, has not found that reversal or dismissal of an indictment is an appropriate remedy, where there is no prejudice to the defendant, where there's been every opportunity for cross-examination, and where there are less drastic remedies available but not invoked, the error has been found to be harmless. Well, there's a much less drastic remedy, isn't there? The government could not put such a clause in a plea agreement. Absolutely, Your Honor. I agree. And why does the government do that, notwithstanding the Ninth Circuit having frowned on the practice? Your Honor, I cannot personally answer for why the policy reasons behind this language. The government has submitted this type of language in plea agreements for cooperating co-defendants, cooperating witnesses, and that is one of the reasons why, in a bargained for contract, so to speak, there are more agreements presented. But the language did not preclude defense counsel from contacting the witnesses, and defense counsel had every opportunity to ask for remedies by the district court, but did not. So there's been no showing of that. So you think the defense could have asked the district court to allow an interview without the government present? Yes, I do, Your Honor, absolutely. The court could have found that that language is not enforceable under this Circuit's law and still upheld the plea agreements in those cases. You want to talk about the fingerprint facts? Yes, I do, Your Honor. In determining the defendant to be a career criminal, the district court found that the government exhibits labeled one and two were reliable hearsay. That's at ER 60. Specifically finding that there was no suggestion that those exhibits did not originate from the FBI or that they were not genuine. The testimony before the district court at the sentencing hearing was that the criminal history, the numerous aliases, the immigration history, et cetera, was generated by an NCIC records check by the FBI's number for this. You see, the difficulty I have with that, Ms. Boone, is that it begs the question. There's no doubt in my mind, and I look at these like the district court did, this is an FBI form. Yes, Your Honor. And it came from the FBI. I would have no doubt about that. And they did say A equals B, someone said. But whether that's reliable or not, nobody came in to even talk about what process they use to give it any foundation as to whether it should be reliable. The probation officer who testified didn't know anything. Your Honor, in this case, the information was found to be reliable because the NCIC report is totally based on fingerprints, and that the fingerprints from the current arrest had been matched to the FBI master card, master fingerprint card, and that the fingerprints from the 1989 arrest had also been matched. But he didn't know any of that. He's not doing any more than you or I could do, which is to say, according to this piece of paper, correct? But that is hearsay, Your Honor. Well, it is hearsay. But the question is, is that reliable? And we have these extraordinary cases not long ago of the FBI's so-called wonderful fingerprint matching linking up a lawyer from Oregon with the bombing of the trains in Madrid, and they were just flat wrong. So the question is, can they just accept a piece of paper because it comes from the FBI, or do you need someone to come in and give it some context to give it reliability? The government would submit, Your Honor, that in this case you do not need further context. And I would ask the Court to note that the defendant in this case did not challenge any other alias attributed to him or any other criminal conviction attributed to him under this same NCIC report. Well, maybe because that was him. He's saying, here, that's not me. Your Honor. Isn't that what he's saying? No, Your Honor. The government begs to differ with you. The district court during the hearing never was presented any contradictory evidence. The defendant never testified and said, that wasn't me. Does that relieve the government of the burden to offer proper proof? No, Your Honor. It does not. The government is submitting that it submitted sufficient evidence of reliability in that there was no contradictory evidence. There was no direct challenge. The only challenge, attempted challenge, was to the qualifications of the fingerprint examiner. However, defendants submitted no basis upon which the district court would have found reason to question the qualifications of the examiner. How could he challenge the qualifications of a witness not present? Your Honor, the government would submit that the defendant had to at least raise some basis, some reason, for the district court to question those qualifications. If there was no question about the qualifications of the FBI examiner for any other conviction, for any other examination, why then should the district court find, with absolutely no basis, that it should question this particular conviction absent any evidence or suggestion from the defendant upon which the district court should question it? There was no evidence. If the case is remanded, does the government intend to establish the Michigan conviction through this facts cover sheet once again? Your Honor, if the case should be remanded. That question calls for a yes or a no. No, Your Honor. Okay. Probably not. Okay. I think Judge Clifton may have had a question. The Supreme Court last week in the Shepard case raised a question about what it is about prior convictions that can be considered by and concluded by the court and what it is that might be a factual question. It came up very recently. Are you familiar with the Shepard decision? Your Honor, as a matter of fact, I did happen to look at it. And the government would submit that Shepard does not really go to this particular issue, because in the Shepard case, the underlying issue was what documents, what particular information can the court consider in deciding whether or not the particular felony met the qualifications? In this case, the only challenge was whether or not the defendant's This particular defendant had the conviction. It wasn't a question of whether or not the conviction met the qualification for the sentencing. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the next case on the agenda.
judges: Hawkins, McKeown, Clifton